NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2079
_____

BRUCE A. KIBE, JR.,
                            Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court Civil No. 2-18-cv-00228)
District Judge:  Honorable Donetta W. Ambrose

Submitted Under Third Circuit L.A.R. 34.1(a)
November 1, 2019

BEFORE:  HARDIMAN, PHIPPS, and NYGAARD, *Circuit Judges*

(Filed:  December 16, 2019)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

NYGAARD, *Circuit Judge.*

Appellant Bruce Kibe, Jr., appeals from the decision of the District Court granting summary judgment to the Commissioner of Social Security who denied Kibe's claim for disability benefits. We review to determine whether the Commissioner's decision is supported by substantial evidence.[1] We will affirm.

As the parties are familiar with the record, we raise here only those facts that are essential to our decision. Kibe contends, first, that the ALJ erred at step three of the five-step analysis by concluding that his impairments (learning disorder/borderline intellectual functioning, bipolar disorder and schizoaffective disorder) did not show the marked restrictions necessary to be "severe enough to prevent an individual from doing gainful activity"[2] consistent with the impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05 (intellectual disorder). Kibe points to his verbal comprehension IQ score of 70 and contends the ALJ erroneously relied on speculative inferences from the record to discredit it. Kibe also complains that the ALJ ignored the fact that, while in school, he was placed in specialized classes for learning disabled students. This placement, of itself, he says, was significant evidence of his impairment.

Yet, the ALJ pointed to an array of evidence that undermined the IQ score as an accurate reflection of the severity of Kibe's impairment. Kibe did not produce any physician diagnoses of an intellectual disability. Dr. David Newman diagnosed only

---

[1] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). "We have jurisdiction under both 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) to review final determinations by the Commissioner." *Id.*

[2] 20 C.F.R. § 404.1525(a).

borderline intellectual functioning.  In addition, Kibe showed adaptive ability by:  tending to his own personal care; independently making and keeping his own medical appointments; showing an ability to read and write; and, exhibiting an ability to do gainful employment.  Moreover, after acknowledging that Kibe was in special education classes and had academic scores in a low to moderate range, the ALJ evaluated this evidence as insufficient to show low intellectual function.  In short, the ALJ did not ignore or misinterpret crucial evidence relevant to step three of the analysis, nor did the decision rely on mere speculation.  The ALJ's decision that Kibe's impairments did not show the marked restrictions necessary to meet a listed impairment is supported by substantial evidence.  There is no basis here to remand.

Kibe next contends that the ALJ did not include his borderline intellectual functioning, as well as marked limitations in a number of areas, in the questions to the vocational expert at step five of the analysis.  He maintains that this undermines the Residual Functional Capacity finding.  The ALJ erred, he argues, by disregarding evidence of limitations in social interactions, as exhibited in Kibe's verbal and physical altercations with co-workers, and similar behavior with people outside of work.  He contends this demonstrates a marked limitation on his ability to work with others.

Next Kibe says the ALJ brushed aside the opinion of his treating physician who opined that Kibe was completely disabled.  He maintains that Dr. Joel Last's observations and conclusions carried great weight because he was his treating physician.  He also asserts that the ALJ relied instead on "stale" evidence.

3

There are a number of problems with his contentions. The ALJ has wide latitude to create hypothetical questions that incorporate a claimaint's functional limitations. The ALJ also has ample discretion to weigh Kibe's own opinions about his difficulties in work environments. With that said, noting that Kibe had mental limitations and moderate difficulties in social functioning, the record shows that the ALJ constructed hypotheticals accounting for superficial or minimal contact with the general public and co-workers. The hypotheticals also addressed a need for simple, repetitive tasks and precluded work with a fast pace or with production quotas. As for Dr. Last's opinion, the ALJ did not disregard it. He accepted Last's diagnosis of a schizoaffective disorder. But, as for his opinion on functional limitations and his general assessment that Kibe was completely disabled, the ALJ noted that the Doctor's own record did not support his conclusions. The ALJ characterized Kibe's medical treatment as conservative and largely successful in managing his impairments (for instance, dropping from monthly appointments to three-month appointments to monitor his medication), contradicting Dr. Last's conclusions about Kibe's marked limitations. This led the ALJ to give less weight to Last's opinion, eliminating any concerns about the date of the evidence the ALJ relied upon. The ALJ's hypotheticals reflected the entire record; his analysis properly focused on assessing evidence of Kibe's functional limitations. We conclude that substantial evidence supports the ALJ's decision denying benefits.

For all of these reasons, we will affirm the order of the District Court.